RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0380p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

EMIN BILALI,

　　　　　　　　　　　　　　*Petitioner,*

　　　*v.*
　　　　　　　　　　　　　　　　　　　　No. 06-4050

ALBERTO GONZALES, Attorney General,

　　　　　　　　　　　　　　*Respondent.*

---

On Petition for Review from the
Board of Immigration Appeals.
No. A75 260 001.

Argued: July 26, 2007

Decided and Filed: September 18, 2007

Before: DAUGHTREY and GILMAN, Circuit Judges; ADAMS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Russell R. Abrutyn, MARSHAL E. HYMAN & ASSOCIATES, Troy, Michigan, for Petitioner. James E. Grimes, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Marshal E. Hyman, MARSHAL E. HYMAN & ASSOCIATES, Troy, Michigan, for Petitioner. James E. Grimes, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

## OPINION

---

PER CURIAM. The petitioner, Emin Bilali, petitions for review of the denial of his motion for reconsideration by the Board of Immigration Appeals (BIA), contending that the BIA erred in failing to give preclusive effect to a preliminary determination by an immigration judge that his marriage was bona fide. Because that determination was not a final judgment on the merits but, rather, merely the first step in a procedure that expressly provides for further inquiry into the validity of the marriage before a final determination is made, we conclude that the BIA properly denied Bilali's motion.

---

[*]The Honorable John R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

Petitioner Emin Bilali is a citizen of the former Yugoslavia who entered the United States legally as a visitor on June 16, 1996. His authorized stay expired on December 15, 1996, and Bilali thereafter filed for asylum. On September 16, 1997, while deportation proceedings against him were pending, Bilali married Nancy Tomovski. Tomovski then filed a Petition for Alien Relative, which the former Immigration and Naturalization Service (INS) approved on August 6, 1998. Based on this approval, Bilali withdrew his asylum application and applied for adjustment of status.

In order for an alien to obtain permanent residency on the basis of marriage to a United States citizen, the citizen spouse must first file a petition to classify the alien spouse as an "immediate relative." *See* 8 U.S.C. § 1154(a)(1)(A)(i); 8 C.F.R. § 204.2(a)(1). The government then investigates the facts alleged in the petition and approves the petition if it determines the facts to be true and concludes that the alien is an immediate relative under the statute. 8 U.S.C. § 1154(b). However, the government cannot approve a petition for classification as an immediate relative if the marriage was "entered into in order to evade immigration laws." *Id.* § 1154(c).

The determination that an alien spouse qualifies as an immediate relative under the statute is only the first step in a longer process that was enacted specifically to address concerns about marriage fraud. *See Almario v. Attorney General*, 872 F.2d 147, 149 (6th Cir. 1989). Once an alien has been classified as an immediate relative pursuant to the procedure described above, he "is only entitled to a two year conditional status as a lawful permanent resident." *Id.*; *accord* 8 U.S.C. § 1186a. In order to remove the conditional basis of his residency, an alien spouse is required to petition the government near the end of this two-year period. *See* 8 U.S.C. § 1186a(c)(1)(a) and (d)(2). The petition must include a "[s]tatement of proper marriage" demonstrating that, *inter alia*, "the qualifying marriage . . . was not entered into for the purpose of procuring an alien's admission as an immigrant." *Id.* § 1186a(d)(1)(A). The petition must further "be accompanied by . . . documentation establishing that the marriage was not entered into in order to evade the immigration laws of the United States." 8 C.F.R. § 216.4(a)(5).

After filing a petition, the alien spouse and petitioning spouse "must appear for a personal interview" regarding the statements made in the petition, including the statement of proper marriage. 8 U.S.C. § 1186a(c)(1)(B). "If the conditional resident alien and/or the petitioning spouse fail to appear for an interview in connection with the joint petition . . . the alien's permanent residence status will be automatically terminated . . . ." 8 C.F.R. § 216.4 (b)(3); *accord* 8 U.S.C. § 1186a(c)(2)(A). If the parties do comply with the petition and interview requirements, then the government will subsequently make a determination "as to whether the facts and information . . . alleged in the petition," including the statement of proper marriage, "are true with respect to the qualifying marriage." 8 U.S.C. § 1186a(c)(3)(A). "In adjudicating the petition," the government must determine whether, *inter alia*, "[t]he qualifying marriage was entered into for the purpose of procuring permanent residence status for the alien." 8 C.F.R. § 216.4(c). Only if the government "determines that [the] facts and information [alleged in the petition] are true . . . shall [it] remove the conditional basis" of the alien's permanent residence status. 8 U.S.C. § 1186a(c)(3)(B). If, on the other hand, the government determines that the "facts and information are not true," then the government will "terminate the permanent resident status." *Id.* § 1186a(c)(3)(C).

In this case, the immigration judge granted Bilali's application for adjustment of status on August 27, 1999, giving Bilali conditional permanent resident status. In granting this application, the immigration judge noted that "the issue to be resolved [wa]s whether [the marriage] was entered into to obtain immigration benefit" and concluded that "from the evidence that ha[d] been provided [he] d[id] not believe that [wa]s the case." The government did not appeal this decision.

On June 18, 2001, Bilali and Tomovski filed a Petition to Remove the Conditions on Residence, pursuant to 8 U.S.C. § 1186a(c) and 8 C.F.R. § 216.4. The INS directed Bilali and Tomovski to appear for an interview with Officer William DeFluri, as required by 8 U.S.C.

§ 1186a(c)(1)(B). Bilali and Tomovski appeared for this interview and Officer DeFluri questioned them in order "to ascertain if [their] marriage was one that was valid for the purposes of immigration law," as required by 8 U.S.C. § 1186a. At this point, the petitioners were required to submit "evidence that the marriage was not entered into for the purpose of evading the immigration laws of the United States." 8 C.F.R. § 216.4(a)(5). Officer DeFluri concluded that Bilali and Tomovski had failed to "provide sufficient evidence to support the contention that [they] ha[d] resided and continue[d] to reside in a genuine marital relationship" and, therefore, requested a second interview that would include Tomovski's parents. Bilali and Tomovski agreed to this arrangement, and a second interview was scheduled.

Three days after the initial interview, an officer from the local Sheriff's Department called Officer DeFluri and repeated Tomovski's allegation that she had "been coerced into entering into matrimony with Mr. Emin Bilali." Officer DeFluri requested that Tomovski contact him directly to discuss the matter, which she did. Officer DeFluri said that when Tomovski called later the same day, she told him "that she and Emin had never actually lived together and that she had been coerced into entering the marriage by threat of force [and] clearly and emphatically stated that she and her parents had been threatened by Mr. Bilali if they did not cooperate in helping him to procure status as an alien lawfully admitted for permanent residence." Officer DeFluri also said that Tomovski had agreed to come to the office and execute a sworn statement but did not appear at the time of her scheduled appointment. Instead, on the day the second interview was scheduled, Tomovski called Officer DeFluri and told him that she had fabricated her previous statements "because she had been angry at Emin Bilali for cheating on her."

When Bilali and Tomovski appeared for the second interview, they were not accompanied by Tomovski's parents as had been previously arranged. Officer DeFluri attempted to interview Tomovski, but on the advice of counsel, Tomovski refused to answer DeFluri's questions. The interview was thereupon terminated.

The INS subsequently notified Bilali that his Petition to Remove Conditions on Residence had been denied and that his conditional resident status would therefore be terminated. Citing Tomovski's refusal to answer interview questions as the basis for its decision, the INS concluded that Tomovski's failure to respond was tantamount to "a willful decision to abstain from appearing at all" and thus concluded that she and Bilali had "failed to appear for the scheduled interview." As provided by statute and pertinent regulations, the failure of the alien spouse or petitioning spouse to appear at an interview, unless excused by good cause, requires the government to terminate the permanent resident status of the alien. *See* 8 U.S.C. § 1186a(c)(2)(A); 8 C.F.R. § 216.4(b)(3).

At subsequent removal proceedings, Bilali argued that his conditional status was wrongly revoked and that it should have been made permanent without further proof that the marriage was bona fide. He claims that because the immigration judge who granted him conditional permanent status had made a preliminary determination that his marriage was bona fide, collateral estoppel should operate to bar further inquiry into the question.

The immigration judge in Bilali's removal proceedings rejected this argument and found Bilali removable, holding that collateral estoppel did not apply because the earlier decision of the immigration court was conditional rather than final. The immigration judge explained that Bilali's earlier case "only granted him a conditional status" and that "[t]here was no final ruling on whether he should be awarded the permanent status." The judge added, cogently:

> On its face, respondent's position crumbles on its own weight. The statute uses the term "conditional" at two different points. Section 216(a)(1) [8 U.S.C. § 1186a(a)(1)] provides when an alien spouse is granted conditional status, it shall be considered "on a conditional basis subject to" meeting the remaining requirements

of § 216. Section 216 then requires a petition and further interview to determine the facts. Section 216 (c)(3)(B) further provides, "If the Attorney General determines that such facts and information are true, the Attorney General . . . shall remove the conditional basis . . . ." To accept respondent's contention would be to read the word "conditional" completely out of the statutory scheme and render the statute impotent.

Bilali appealed to the BIA, arguing again that collateral estoppel barred inquiry into the validity of his marriage. The BIA dismissed the appeal, agreeing with the immigration judge that collateral estoppel was inapplicable because there had been no final decision on the validity of Bilali's marriage:

> The respondent's arguments that questions about the marriage were irrelevant or barred by the previous grant of conditional resident status are not supported by the statutory and regulatory framework under which an alien is granted adjustment of status. In fact, the regulations make very clear that the purpose of the 2-year waiting period, followed by a secondary application to remove the conditions on residency are for the purpose of establishing that the marriage was valid. Therefore, the respondent's assertion that the issue had already been decided when he was granted conditional resident status is not supportable. There was no final decision on the validity of the respondent's marriage; there was only a temporary decision to be reviewed and decided at a later time. The *res judicata* cases cited by the respondent in his brief on appeal are not dispositive since they relate to decisions where there was a final decision on the merits, not a continuing application.

Bilali did not file a petition for review of the BIA's dismissal of his appeal. He did, however, move for reconsideration, contending that the Board had erred in failing to give preclusive effect to the immigration judge's preliminary decision about the validity of his marriage. The BIA denied the motion, explaining again that:

> [T]he regulations make very clear that the purpose of the two year waiting period is to revisit the issue of whether the underlying marriage is bona fide. *See* 8 C.F.R. §§ [ ]216.1 through [ ]216.4. . . . . [Bilali's] argument overlooks the procedural posture of the case. Specifically, the Immigration Judge's decision in December 2004 concerned the termination of the respondent's conditional permanent resident status in accordance with section 216(c) of the Immigration and Nationality Act. This issue was not legally or factually identical to the previous determination in August 1999, that the respondent was eligible to adjust his status to that of a conditional permanent resident based upon a marriage to a United States citizen. Thus, as the findings of the Immigration Judges in August 1999 and December 2004 were not factually or legally identical, the arguments concerning issue preclusion lack merit.

Bilali now petitions this court for review of the BIA's denial of his motion for reconsideration. Although Bilali acknowledges, as he must, that our jurisdiction is limited to the review of that specific ruling, he attempts to argue issues that were not presented in his motion for reconsideration. Because the sole argument raised in Bilali's motion for reconsideration was that the BIA erroneously failed to "give *res judicata* or collateral estoppel or law of the case effect to the Immigration Judge's decision in a prior proceeding in this case as to the validity of the marriage of Mr. Bilali and his spouse," that is the only issue now before us.

The doctrine of collateral estoppel, also known as issue preclusion, is one of two preclusion concepts that comprise the doctrine of *res judicata*. *See Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984) (citations omitted). Collateral estoppel "refers to the effect of a

judgment in foreclosing relitigation of a matter that has been litigated and decided." *Id.* (citation omitted). In order for collateral estoppel to apply:

> "1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;
>
> 2) determination of the issue must have been necessary to the outcome of the prior proceeding;
>
> 3) the prior proceeding must have resulted in a final judgment on the merits; and
>
> 4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding."

*United States v. Cinemark USA, Inc.*, 348 F.3d 569, 583 (6th Cir. 2003) (quoting *Aircraft Braking Sys. Corp. v. Local 856, Int'l Union*, 97 F.3d 155, 161 (6th Cir. 1996)).

Bilali argues that collateral estoppel applies to the immigration judge's preliminary determination that Bilali's marriage was bona fide when granting his application for adjustment of status. In making this argument, Bilali fails to acknowledge that this initial proceeding did not "result[] in a final judgment on the merits" and, therefore, cannot have a preclusive effect. *Cinemark*, 348 F.3d at 583; *see also Ashe v. Swenson*, 397 U.S. 436, 443 (1970) ("'Collateral estoppel' . . . means simply that when an issue of ultimate fact has once been determined by a valid and *final judgment*, that issue cannot again be litigated between the same parties in any future lawsuit." (emphasis added)); *Pac. Employers Ins. Co. v. Sav-a-Lot of Winchester*, 291 F.3d 392, 399 (6th Cir. 2002) ("[T]he doctrine of collateral estoppel prevents a party from relitigating factual issues resolved against it in a prior proceeding where there has been a *final judgment on the merits*." (emphasis added) (citing *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 981-82 (6th Cir. 2000))); *Ritchie v. Eberhart*, 11 F.3d 587, 594 (6th Cir. 1993) (*res judicata* "has no application in the absence of a final judgment").

The immigration judge's initial determination that Bilali qualified as an "immediate relative" and therefore was entitled to conditional permanent resident status was a preliminary rather than a final determination. Indeed, the statutory and regulatory provisions pursuant to which Bilali was able to obtain conditional permanent resident status repeatedly reference the conditional nature of the determination. *See* 8 U.S.C. § 1186a; 8 C.F.R. § 216.4. Further, these provisions make exceptionally clear that notwithstanding a preliminary determination that a marriage is bona fide, a petitioner's status remains conditional until the government makes a final adjudication of the validity of the marriage. *See* 8 C.F.R. § 216.4(c).

Because collateral estoppel does not apply in the absence of a final decision on the merits and because there was no such decision here, Bilali's argument fails. We therefore DENY review of the petition in this case.