**Mike ABGHARI, Jaleh Tadjdeh, Plaintiffs,**

v.

**Alberto GONZALES, Attorney General of the U.S.; et al., Defendants.**

No. 2:05–cv–01210–FMC.

United States District Court, C.D. California.

Feb. 9, 2009.

Maurice C. Inman, Jr., Inman and Associates, Sergei Shevchenko, Barshev PC, Beverly Hills, CA, for Plaintiffs.

Sara R. Robinson–Glasser, AUSA–Office of U.S. Attorney, Los Angeles, CA, for Defendants.

## ORDER GRANTING SUMMARY JUDGMENT SUA SPONTE FOR THE DEFENSE

FLORENCE–MARIE COOPER, District Judge.

This matter is before the Court on Plaintiffs' Request for a De Novo Hearing after denial of their naturalization applications. The Court has read and considered the parties' trial briefs, as well as the supplemental briefing ordered by the Court. The Court deems these matters appropriate for decision without oral argument. *See* Fed.R.Civ.P. 78; Local Rule 7–15. Accordingly, the hearing set for February 10, 2009, is removed from the Court's calendar. For the reasons and in the manner set forth below, the Court hereby **GRANTS** Summary Judgment sua sponte in favor of Defendants.[1]

## I. REVIEW OF FACTUAL AND PROCEDURAL BACKGROUND

The case concerns the adjudication of naturalization applications by the United States Citizenship and Immigration Services ("USCIS") when the naturalization applicants are in conditional lawful permanent resident status because the petition to remove the conditions on their status has not been adjudicated.

### A. Delayed Adjudication of Naturalization Applications

Plaintiffs originally came to this Court seeking review, pursuant to 8 U.S.C. § 1447(b), which provides for district court review of the Government's failure to timely adjudicate a pending naturalization application once the applicant has been interviewed. The parties agreed that Plaintiffs were conditional permanent residents and that the USCIS had failed to make a determination on Plaintiffs' applications for naturalization before the end of the 120–day period after the Plaintiffs filed the applications.

As the Court set out in its February 14, 2006 Order, 2006 WL 5838985 on the parties' cross motions for summary judgment in this case, the parties did not dispute the chronology or timing of the events at issue in this case:

> On September 5, 1997, Plaintiff Jaleh Tadjdeh ("Tadjdeh") was admitted to the United States as a conditional permanent resident on the basis of her approved petition for classification in the employment-based, fifth-preference ("EB–5") immigrant visa category. On December 30, 1997, her husband Mike Abghari ("Abghari") was admitted to the United States as a conditional perma-

---

1. A district court's authority to grant summary judgment sua sponte is well established in this Circuit. "Sua sponte entry of summary judgment is proper if 'there is no genuine dispute respecting a material fact essential to the proof of movant's case....'" *Buckingham v. United States*, 998 F.2d 735, 742 (9th Cir.1993) (quoting *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir.1982)). That authority is not without restrictions: "[A] litigant must be given reasonable notice that the sufficiency of his or her claim will be in issue: 'Reasonable notice implies adequate time to develop the facts on which the litigant will depend to oppose summary judgment.'" *Buckingham*, 998 F.2d at 742 (9th Cir.1993) (quoting *Portsmouth Square v. Shareholders Protective Comm.*, 770 F.2d 866, 869 (9th Cir. 1985)).

Most recently, the Ninth Circuit stated the standard as follows: "Before a court makes a sua sponte grant of summary judgment, 'a litigant must be given reasonable notice that the sufficiency of his or her claim will be in issue.'" *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1092 (9th Cir. 2004) (quoting *Buckingham*, 998 F.2d at 742).

nent resident on the basis of his status as the spouse of an EB–5 alien admitted in conditional permanent resident status.

On July 22, 1999, Tadjdeh timely filed a Petition by Entrepreneur to Remove Conditions (Form I–829). Neither party indicates that Tadjdeh was interviewed in connection with her I–829 petition, and the petition has not been adjudicated.

On February 21, 2003, more than five years after Plaintiffs were admitted to the United States in conditional lawful permanent resident status, they both filed applications for naturalization (Form N–400).

On September 15, 2003, Abghari attended the USCIS interview conducted in connection with his naturalization application. On December 3, 2003, Tadjdeh attended the USCIS interview conducted in connection with her naturalization application. After completing Plaintiffs' naturalization interviews, USCIS took and maintained the position that Plaintiffs' naturalization applications could not be approved because the conditions on their permanent resident status had not been removed. [At the time the motions were before the Court], neither naturalization application ha[d] been adjudicated.

On February 17, 2005, Plaintiffs filed their Petition for Hearing on Naturalization Application with this Court, asking the Court to adjudicate their pending naturalization applications (also referred to as "N–400s," referencing the number of the form used for the naturalization applications) or remand their N–400 applications to USCIS for adjudication.

Feb. 14, 2006 Order at 2–4.

With their cross motions for summary judgment, the parties sought a determination of whether Plaintiffs, as conditional permanent residents, had been lawfully admitted as permanent residents for the purposes of qualifying for naturalization. Plaintiffs maintained that the sole issue before the Court was whether Plaintiffs should be naturalized because they had resided in the United States for five years after being lawfully admitted for permanent residence. The Government asked the Court to find that Plaintiffs were not eligible for naturalization because they were conditional permanent residents. The Government argued that, although conditional permanent residents are eligible to *apply* for naturalization, they cannot be naturalized until the USCIS removes the conditions. The Government also informed the Court that the USCIS could not act on Plaintiffs' pending naturalization applications because regulations governing Plaintiffs' particular situation had not yet been published.

The Court explained the "conditional" nature of Plaintiffs' status as follows:

EB–5 immigrants are initially granted permanent resident status on a conditional basis. 8 U.S.C. § 1186b(a)(1). Conditional permanent residents enjoy the same "rights, privileges, responsibilities and duties" as lawful permanent residents, "except that a conditional permanent resident is also subject to the conditions and responsibilities set forth in section 216 [8 U.S.C. § 1186a, which addresses conditional resident status for spouses and children of United States citizens] or 216A [8 U.S.C. § 1186b, re: conditional resident status for EB–5 investors] of the Act, whichever is applicable." 8 C.F.R. § 216.1. Those rights, privileges, and responsibilities include "the right to apply for naturalization (if otherwise eligible), the right to file petitions on behalf of qualifying relatives, the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws

. . .; the duty to register with the Selective Service System, when required; and the responsibility for complying with all laws and regulations of the United States." *Id.*

The conditional permanent resident status of EB–5 immigrants may be terminated under certain circumstances. *E.g.,* 8 U.S.C. §§ 1186b(b)(1)(A)-(C) (providing for termination of such status "before the second anniversary of the alien's obtaining the status of lawful admission for permanent residence" upon a determination that the alien failed to make or sustain the required investment or otherwise failed to satisfy the requirements for EB–5 classification); 8 U.S.C. § 1186b(c)(2)(A) (termination where the alien fails to file an I–829 petition or attend the interview scheduled on the basis of that application); 8 U.S.C. § 1186b(c)(3)(C) (termination after the I–829 interview upon a determination that the facts and information provided by the alien in connection with the petition were not true).

Feb. 14, 2006 Order at 4–7.

The Court also explained what was required to have the conditions removed from an applicant's permanent resident status:

> In order to have the conditional status removed, EB–5 immigrants must file an I–829 petition during the 90 days prior to the two-year anniversary of their admission to the United States in conditional permanent resident status. 8 U.S.C. § 1186b(d)(2)(A). If conditional permanent residents fail[ ] to timely file the I–829, absent a showing of good cause and extenuating circumstances for the failure to file, they automatically lose their permanent resident status as of the second anniversary of the date of their acquisition of conditional perma-

nent resident status. 8 U.S.C. § 1186b(d)(2)(B).

> Where EB–5 immigrants file timely petitions to remove conditions, as noted above, they must attend the interview scheduled in conjunction therewith, unless that interview is waived. 8 U.S.C. § 1186b(d)(3). The statute provides that the Government "shall make a determination, within 90 days of the [sic] such filing or interview (whichever is later), as to whether the facts and information described in subsection (d)(1) of this section and alleged in the petition are true with respect to the qualifying commercial enterprise." 8 U.S.C. § 1186b(c)(3)(ii) (emphasis added).

Feb. 14, 2006 Order at 7.

The Court considered the Government's argument that conditional residents only have the right to *apply* for naturalization, *i.e.* to file N–400 applications, but that there is no corresponding right to have their N–400s *adjudicated* under the provisions of the statute. In light of the Government's statutory obligations to timely adjudicate timely filed applications and petitions, *e.g.,* 8 U.S.C. § 1186b(c)(3)(A)(ii) (90 days for I–829 petitions); 8 U.S.C. § 1447(b) (120 days after naturalization interviews), the Court granted Plaintiffs' Motion for Summary Judgment, denied the Government's Motion for Summary Judgment, and remanded the matter to the USCIS for a determination, within 120 days of the date of the Court's Order, "as to whether Plaintiffs' N–400 applications should be granted or denied, with reasons therefor." Feb. 14, 2006 Order at 11–12.

On June 22, 2006, the Government notified the Court that, on June 13, 2006, the USCIS denied Plaintiffs' N–400 applications. The denial notices advised Plaintiffs that their applications were denied because "[a] person may only be naturalized if the grant of permanent residence was lawful."

June 22, 2006 Not. of Issuing Decisions, Exs. A & B (quoting *Monet v. INS,* 791 F.2d 752, 753 (9th Cir.1986), as follows: "[a]dmission is not lawful if it is regular only in form. The term 'lawfully' denotes compliance with substantive legal requirements, not merely procedural regularity ..."). The notices also state that a review of Plaintiffs' files revealed that "Jaleh Tajdeh, the principal EB–05 applicant, reveals that she did not make the required investment or create and maintain at least ten (10) full-time positions for qualifying employees at the time she was accorded permanent resident status under section 216A of the INA." *Id.* After citing case law holding that individuals are not "lawfully admitted for permanent residence" where that status is obtained by fraud, mistake, or where the applicant "had otherwise not been entitled to it," the notices concluded that "[y]ou were not lawfully accorded permanent resident status[,] and since lawful permanent resident status is a pre-requisite to naturalization, you are not eligible for naturalization."[2] *Id.*

## B. Litigation Subsequent to USCIS Denial of Naturalization Applications

On December 7, 2007, Plaintiffs filed a Motion to Schedule De Novo Hearing on Naturalization Application Pursuant to 8 U.S.C. § 1421(c). With that filing, Plaintiffs notified the Court of USCIS's denial of their N–400 applications. Plaintiffs also advised the Court that they had exhausted their administrative remedies, by filing a Form N–336, Request for Hearing on a Decision in Naturalization Proceeding, and attending the administrative hearing before a USCIS officer. According to Plaintiffs, the examining officer "stated that she

[was] not proficient with regards to such matters, collected Plaintiffs' brief and supporting exhibits and advised Plaintiffs to wait for a reply from [USCIS]." Pls' Mot. at 8 n. 1. Plaintiffs also presented the central themes of their position in this litigation, including that: (a) as lawful permanent residents since late 1997, being granted extensions of that status from 1999 to 2007, they are eligible to naturalize, and (b) the statutory provisions are properly read to mean that Plaintiffs' conditional status "is irrelevant and of no consequence, and does not deprive Plaintiffs of the right to become a naturalized U.S. citizen." Pls' Mot. at 11–12.

On December 11, 2007, the Court set a briefing schedule for the parties and scheduled the hearing for March 12, 2008.

On January 23, 2008, Plaintiffs filed their Opening Trial Brief, stating that Plaintiffs seek "this Court's de novo adjudication of their citizenship application." Pls' Opening Br. at 2. Plaintiffs urge the Court to conduct that adjudication "without any reference to or deference to Defendants." *Id.* at 9. On February 15, 2008, the Government filed its Opposition, arguing that Plaintiffs were not lawfully admitted as permanent residents, have not demonstrated that they complied with the residency and physical presence requirements for naturalization, and have not demonstrated that they are people of good moral character. Defs' Opp'n Br. at 12–15. The Government acknowledged that Plaintiffs exhausted their administrative remedies after their N–400 applications were denied. *Id.* at 2–3. On February 29, 2008, Plaintiffs filed their Reply, to which they attached a notice from the US-

---

**2.** The Court notes that it has not been advised of the status Plaintiffs' I–829 petitions to have the conditions removed from their permanent resident status. The Court presumes that those petitions remain unadjudicated, but the status of those petitions has never been—and is not now—before this Court.

CIS, dated March 27, 2007, notifying Plaintiffs that the denial of their naturalization applications was affirmed. Pls' Reply Br., Ex. A. With their Reply, Plaintiffs argue that USCIS's position that their permanent resident status was not lawfully obtained is wholly inconsistent with the agency's repeated extensions of Plaintiffs' permanent resident status over the many years that their I–829 petitions have remained (and remain) pending. Plaintiffs also argue that the denial of their naturalization applications represents an impermissible, indirect attempt by USCIS to retroactively apply new rules regarding the adjudication of I–829 applications by EB–5 immigrant investors. *See Chang v. U.S.*, 327 F.3d 911, 928–930 (9th Cir.2003) (finding USCIS had impermissibly improperly applied new rules for adjudication of EB–5 petitions to deny I–829 applications of immigrant investors who had originally been granted EB–5 status before the new rules were promulgated).

In March, the Court continued the hearing date until April 16, 2008. The parties then twice stipulated to continue the hearing: first to August 12, 2008, and then to October 1, 2008. The Court then re-set the hearing for October 30, 2008.

On October 10, 2008, the Court issued a Minute Order in advance of that hearing date, stating:

> After an agency denial of an application for naturalization, the Court has the authority to make its own factual findings and legal conclusions in connection with the naturalization application:
>
> > A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance

> with chapter 7 of Title 5. Such review shall be de novo, and *the court shall make its own findings of fact and conclusions of law* and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c) (emphasis added); *see also U.S. v. Hovsepian*, 359 F.3d 1144, 1162 (9th Cir.2004) ("The court may not rely on the INS's findings of fact or law and, on request, must hold its own hearing on the naturalization application.").

Here, based on the Court's review of the parties' briefing and the record, it does not appear that Court can or should consider new facts or evidence in connection with this de novo hearing; rather, it appears that the question before the Court is a legal one: whether a conditional permanent resident may be naturalized. Stated otherwise, the question of whether the conditions could, can, or should be removed from Plaintiffs' permanent resident status is not before the Court and never has been.

Oct. 10, 2008 Order. The Court advised the parties that it anticipated hearing argument on this legal issue at the October 30, 2008 hearing and directed the parties as follows: "If either party has contrary authority, a brief should be filed and served no later than October 20, 2008." *Id.*

On October 16, 2008, the parties stipulated to continue the hearing to February 10–11, 2009.

On October 20, 2008, Plaintiffs filed their "Trial Brief in Support of Conditional Residence Eligibility to Naturalize," responding to the Court's October 10, 2008 Order and reiterating their position that they are eligible for naturalization because they have been "lawfully admitted for permanent residence." On October 22, 2008, the Government filed its "Trial Brief and Re-

sponse to the Court's Minute Order Dated October 10, 2008." [3] With their brief, the Government disagrees that the question before the Court is a legal one; the Government argues that the Court must determine whether Plaintiffs made the investment and created the jobs required to qualify for EB–5 status.

This matter is now set for hearing on February 10, 2009.

## II. JURISDICTION

■ This Court has jurisdiction to review the denial of Plaintiffs' naturalization applications.

"[S]ole authority to naturalize persons as citizens of the United States" is vested with the Secretary of the Department of Homeland Security ("DHS"). *See* 8 U.S.C. § 1421(a). However, in certain circumstances, district courts have limited jurisdiction over the naturalization process. *See, e.g.*, 8 U.S.C. § 1421(b)(1) (district court may administer the oath of allegiance); 8 U.S.C. § 1421(c) (district court jurisdiction to review de novo naturalization applications that have been denied).[4]

An applicant seeking judicial review of the denial of a naturalization application must first request a hearing a before an immigration officer. 8 U.S.C. § 1447(a). Only if the agency denial is upheld after the hearing may an applicant seek review in the appropriate district court. 8 U.S.C.

§ 1421(c). Section 1421(c) outlines the procedure for judicial review as follows:

A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a)[ [5] ] of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of Title 5. *Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.*

8 U.S.C. § 1421(c) (emphasis added).

Here, the parties do not dispute that Plaintiffs have properly exhausted administrative remedies by requesting and attending the administrative hearing before a USCIS officer pursuant to 8 C.F.R. 336.2(b)

## III. APPLICABLE LEGAL STANDARD

As various Courts of Appeal have noted, 8 U.S.C. § 1421(c) represents a narrow and rather unique grant of jurisdiction to conduct de novo review of USCIS decisions:

As the Tenth Circuit has noted, "[t]his grant of authority is unusual in its scope—rarely does a district court review an agency decision de novo and

---

**3.** The Government acknowledged and apologized for the tardiness of its filing.

**4.** "In 1990, Congress passed the Immigration Act of 1990 ("1990 Act"), Pub. L. No. 101–649, § 401, 104 Stat. 4978. The 1990 Act removed naturalization from the courts and vested the Attorney General with 'sole authority to naturalize persons as citizens of the United States.' 8 U.S.C. § 1421(a). Under the 1990 Act, the *district courts have no authority either to grant or deny applications for naturalization.* Rather, Section 310(c) of the

INA created a process for district court judicial review of denied applications for naturalization." *De Lara Bellajaro v. Schiltgen,* 378 F.3d 1042, 1045 (9th Cir.2004) (emphasis added).

**5.** Section 1447 provides: "If, after an examination under section 1446 of this title, an application for naturalization is denied, the applicant may request a hearing before an immigration officer." 8 U.S.C. § 1447.

make its own findings of fact." *Nagahi v. INS,* 219 F.3d 1166, 1169 (10th Cir. 2000). "[E]ven if the INS is allowed to make the initial decision on a naturalization application, the district court has the final word and does not defer to any of the INS's findings or conclusions." *Hovsepian,* 359 F.3d [1144, 1162 (9th Cir.2004)] (emphasis omitted); *see also Boatswain v. Gonzales,* 414 F.3d 413, 415 n. 2 (2d Cir.2005); *Aparicio,* 302 F.3d [437, 445 (5th Cir.2002)] ("Judicial review of naturalization denials is always available and is de novo, and is not limited to any administrative record but rather may be on facts established in and found by the district court.").

*Chan v. Gantner,* 464 F.3d 289, 290–91 (2d Cir.2006).

Here, the parties have asked the Court to revisit both the factual and legal determinations involved in the adjudication of naturalization applications. The Court declines. The Court need not proceed with an evidentiary hearing or otherwise conduct new fact finding where the Court believes that the legal question it has identified—whether a conditional permanent resident may be naturalized—is a threshold matter.

The Second Circuit's analysis in *Chan,* of a claim that the district court erred in granting summary judgment in a case brought pursuant to 8 U.S.C. § 1421(c), is instructive here:

> Chan argues that the phrase "hearing de novo" in section 1421(c) implies a bench trial or evidentiary hearing and thus sets forth an alternative practice. We disagree. The term "hearing" has a "host of meanings" that encompass a wide variety of procedures. *United States v. Florida E. Coast Railway Co.,* 410 U.S. 224, 239, 93 S.Ct. 810, 35 L.Ed.2d 223 (1973). Absent some otherwise expressed Congressional intent, the mere use of the word "hearing" in a statute does not mandate an evidentiary hearing be held. *See J.D. ex. rel. J.D. v. Pawlet Sch. Dist.,* 224 F.3d 60, 68 (2d Cir.2000) (holding that the use of the phrase "impartial due process hearing" in the Individuals with Disabilities Education Act did not require an evidentiary hearing where there were no genuine issues of material fact). Nor does the phrase "de novo" indicate anything other than the district court's standard of review. *See Aparicio v. Blakeway,* 302 F.3d 437, 440 (5th Cir.2002); *Nagahi v. INS,* 219 F.3d 1166, 1169 (10th Cir. 2000).

> On Chan's interpretation of section 1421(c), moreover, district courts are required to hold bench trials even when there are no disputed issues of material fact. We think that result absurd. His reading thus "signals an erroneous construction." *KLC, Inc. v. Trayner,* 426 F.3d 172, 176 (2d Cir.2005). And there is no indication that Congress intended to waste judicial resources. We therefore conclude that no statute "set[s] forth" an alternative practice for review of citizenship denials such that Rule 56 is inapplicable in those proceedings.

> Finally, under the second part of the test, the practice in review of citizenship denials has "heretofore conformed to the practice in civil actions." Fed.R.Civ.P. 81(a)(2). The application of the Federal Rules of Civil Procedure is the norm under the current naturalization provision, *see e.g., De Lara Bellajaro v. Schiltgen,* 378 F.3d 1042, 1044, 1047 (9th Cir.2004); *Zaranska v. U.S. Dep't of Homeland Security,* 400 F.Supp.2d 500, 505 (E.D.N.Y.2005); *Farghaly v. Frazier,* 404 F.Supp.2d 1125, 1127 (D.Minn. 2005); *Puello v. Bureau of Citizenship and Immigration Services,* 418 F.Supp.2d 436, 437 (S.D.N.Y.2005); *Lar-*

*yea v. United States*, 300 F.Supp.2d 404, 407 (E.D.Va.2004), and was the norm under the prior law, under which the district courts had sole authority for determining eligibility for naturalization, *see Tutun v. United States*, 270 U.S. 568, 577, 46 S.Ct. 425, 70 L.Ed. 738 (1926) (stating that petitions for naturalization were "instituted and ... conducted ... according to the regular course of judicial procedure").

Chan received the hearing required by section 1421(c). Because there was no genuine issue of material fact, the District Court properly entered summary judgment to dispose of the case.

In concluding that the statutory bar to establishing good moral character makes summary judgment appropriate in this case, we do not express an opinion as to the propriety of summary judgment for the government in other cases where such a statutory bar is absent. *Cf. Santamaria–Ames v. INS*, 104 F.3d 1127, 1132–33 (9th Cir.1996); *Asamoah v. U.S. INS*, 2004 WL 736911, at *5 (S.D.N.Y. Apr. 5, 2004), 2004 U.S. Dist. LEXIS 5735, *18; *Gizzo v. INS*, 2003 WL 22110278, at *3 (S.D.N.Y. Sept. 10, 2003), 2003 U.S. Dist LEXIS 15912, *8–*9.

*Chan*, 464 F.3d at 295–96.

Accordingly, as a threshold matter, the Court may consider de novo whether the statutory requirement that an individual be a "lawful permanent resident" in order to naturalize requires, or even permits, approval of a naturalization application by a "conditional permanent resident." If the Court's de novo review of this legal question results in a determination that a conditional permanent resident may not be naturalized until the conditions have been removed from her status, a bench trial or evidentiary hearing is neither necessary or appropriate.

## IV. DISCUSSION

The Court's de novo analysis of this threshold legal question concerning the naturalization of conditional residents requires a review of the relevant statutory and regulatory provisions.

### A. Burden to Establish Eligibility to Naturalize

■ The burden to establish eligibility for naturalization is on the applicant. As the Supreme Court has explained:

[W]hen an alien seeks to obtain the privileges and benefits of citizenship, .... [t]he is the moving party, affirmatively asking the Government to endow him with all the advantages of citizenship. Because that status, once granted, cannot lightly be taken away, the Government has a strong and legitimate interest in ensuring that only qualified persons are granted citizenship. For these reasons, it has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect. This Court has often stated that doubts should be resolved in favor of the United States and against the claimant.

*Berenyi v. District Director, Immigration and Naturalization Service*, 385 U.S. 630, 636–37, 87 S.Ct. 666, 670–71, 17 L.Ed.2d 656 (1967) (internal quotation marks and citations omitted); *see also United States v. Macintosh*, 283 U.S. 605, 626, 51 S.Ct. 570, 75 L.Ed. 1302 (1931), *overruled on other grounds in Girouard v. United States*, 328 U.S. 61, 69, 66 S.Ct. 826, 90 L.Ed. 1084 (1946) ("The Naturalization Act is to be construed 'with definite purpose to favor and support the government,' and the United States is entitled to the benefit of any doubt which remains in the mind of the court as to any essential matter of fact."); 8 C.F.R. § 316.2(b) (requiring that

the naturalization applicant "shall bear the burden of establishing by a preponderance of the evidence that he or she meets all of the requirements for naturalization, including that the applicant was lawfully admitted as a permanent resident to the United States, in accordance with the immigration laws in effect at the time of the applicant's initial entry or any subsequent reentry").

Although the question presently before the Court is a legal rather than a factual one, the Court's analysis of this matter of first impression is informed by the Supreme Court's admonition that the INA "is to be construed with definite purpose to favor and support the government." *U.S. v. Macintosh*, 283 U.S. at 626, 51 S.Ct. 570.

### B. Naturalization Requirements

The Immigration and Nationality Act ("INA") identifies the general requirements for obtaining citizenship through naturalization, specifying that "[n]o person ... shall be naturalized" unless the applicant satisfies the following criteria:

(1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years ...;

(2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship; and

(3) during all the periods referred to in this subsection has been and still is a person of good moral character....

8 U.S.C. § 1427(a).

The implementing regulations state, in relevant part, that "to be eligible for naturalization, an alien must establish that he or she:

(1) Is at least 18 years of age;

(2) *Has been lawfully admitted as a permanent resident of the United States;*

(3) Has resided continuously within the United States, as defined under § 316.5, for a period of at least five years after having been lawfully admitted for permanent residence;

(4) Has been physically present in the United States for at least 30 months of the five years preceding the date of filing the application;

\*　　　\*　　　\*

(6) Has resided continuously within the United States from the date of application for naturalization up to the time of admission to citizenship;

(7) For all relevant time periods under this paragraph, has been and continues to be a person of good moral character, attached to the principles of the Constitution of the United States, and favorably disposed toward the good order and happiness of the United States ...

8 C.F.R. § 316.2(a)(1)-(7) (emphasis added).

Here, the naturalization requirement at issue is that of lawful admission to the United States as a permanent resident.

### 1. Lawful Permanent Resident Status

The INA provides that "no person shall be naturalized unless he has been *lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter.*" 8 U.S.C. § 1429 (emphasis added). The statute defines the term "lawfully admitted for permanent residence" as meaning "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20). The only statutory exceptions of which the Court is aware to the

requirement that a person be "lawfully admitted for permanent residence" in order to naturalize are for persons who have served in the U.S. military.[6]

### 2. Conditional Resident Status

The statute does *not* contain a definition of the term "conditional permanent resident." The term is defined in the regulations as follows:

A conditional permanent resident is an alien who has been lawfully admitted for permanent residence within the meaning of section 101(a)(20) of the Act, except that a conditional permanent resident is also subject to the conditions and responsibilities set forth in section 216 or 216A of the Act, whichever is applicable, and Part 216 of this chapter. *Unless otherwise specified, the rights, privileges, responsibilities and duties which apply to all other lawful permanent residents apply equally to conditional permanent residents, including* but not limited to *the right to apply for naturalization (if otherwise eligible),* the right to file petitions on behalf of qualifying relatives, the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed; . . . All references within this chapter to *lawful permanent residents* apply equally to *conditional permanent residents,* unless otherwise specified . . .

8 C.F.R. § 216.1 (emphasis added).

Two types or classes of immigrants are subject to a period of "conditional status":

EB–5 immigrant investors and the so called "immediate relative" spouse and child(ren) of United States citizens. 8 U.S.C. § 1186b(a)(1) ("Notwithstanding any other provision of this chapter, an alien entrepreneur . . ., alien spouse, and alien child . . . shall be considered, at the time of obtaining the status of an alien lawfully admitted for permanent residence, to have obtained such status on a conditional basis subject to the provisions of this section.").

After a petition to remove conditions on permanent resident status is reviewed and the applicant interviewed, "[i]f the Attorney General determines that such facts and information are true, the Attorney General shall so notify the alien involved and shall remove the conditional basis of the alien's status effective as of the second anniversary of the alien's lawful admission for permanent residence." 8 U.S.C. § 1186b(c)(3)(B). However, "[i]f the Attorney General determines that such facts and information are not true, the Attorney General shall so notify the alien involved and, subject to subparagraph (D), shall terminate the permanent resident status of an alien entrepreneur, alien spouse, or alien child as of the date of the determination." 8 U.S.C. § 1186b(c)(3)(C). The statute also provides that the permanent resident status of an EB–5 immigrant investor, and that of her spouse and child(ren), may be terminated before an application to remove conditions is filed or adjudicated.[7]

---

**6.** One exception exists for persons with (1) past honorable service in the U.S. Armed Forces in times of war or other declared hostilities who were (2) enlisted or inducted while in the United States, the Canal Zone, American Samoa or Swains Island. 8 U.S.C. § 1440(a). A similar exception exists to permit the posthumous grant of citizenship to a person who "died as a result of injury or

disease incurred in or aggravated by that service." 8 U.S.C. § 1440–1(b)(1)–(3).

**7.** "[I]f the Attorney General determines, before the second anniversary of the alien's obtaining the status of lawful admission for permanent residence, that—

(A) the investment in the commercial enterprise was intended solely as a means of

In connection with naturalization, the statutory provisions regarding conditional residents provide that, for purposes of naturalization, "in the case of an alien who is in the United States as a lawful permanent resident on a conditional basis under this section, the alien *shall be considered to have been admitted as an alien lawfully admitted for permanent residence* and to be in the United States as an alien lawfully admitted to the United States for permanent residence." 8 U.S.C. § 1186b(e) (emphasis added).

## C. Analysis

As the parties are well aware, neither the statute nor the regulations address whether a naturalization application by a conditional permanent resident may be approved before the conditions are removed from the applicant's status. In fact, the statutory and regulatory language is far from clear in this regard, creating a "con-

> evading the immigration laws of the United States,
> (B)(i) the alien did not invest, or was not actively in the process of investing, the requisite capital; or
> (ii) the alien was not sustaining the actions described in clause (i) throughout the period of the alien's residence in the United States; or
> (C) the alien was otherwise not conforming to the requirements of section 1153(b)(5) of this title[.]"
> 8 U.S.C.A. § 1186b(b)(1).

**8.** Although it finds the outcome of the case profoundly regrettable, the Court agrees with the Fifth Circuit's reading of 8 U.S.C. § 1429 in *Matter of Longstaff,* 716 F.2d 1439 (5th Cir.1983):

> Admission is not lawful if it is regular only in form. The term "lawfully" denotes compliance with substantive legal requirements, not mere procedural regularity, as the definition provided by Congress plainly establishes: "the term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United

ditional" status but also providing that conditional residents are in all, or nearly all respects, equivalent to lawful permanent residents. *See, e.g.,* 8 U.S.C. § 1186b(e) (stating that statutory provisions regarding conditional residents provide that, for purposes of naturalization, conditional residents "shall be considered to have been admitted as an alien lawfully admitted for permanent residence").

Plaintiffs urge a reading of the applicable provisions that would permit, perhaps even require, the approval of naturalization applications by otherwise qualified conditional permanent residents: conditional permanent residents are eligible as "lawfully admitted to the United States for permanent residence."[8] The Government counters that such a reading renders all the provisions governing conditional resident status and the removal of those conditions meaningless.

> States as an immigrant *in accordance with the immigration laws,* such status not having changed. Section 1429's added requirement "in accordance with all applicable provisions of [the Act]" is not merely redundant, but emphatic and embracive."
> *Matter of Longstaff,* 716 F.2d 1439, 1441 (5th Cir.1983) (footnote omitted) (emphasis in original) (finding that an alien was barred from naturalization because, although admitted to and residing for 15 years in the United States as a permanent resident, he had not been "lawfully admitted" under the statute). The Court finds that the applicable provisions are reasonably read so that "lawfully admitted for permanent residence" means that the alien must have both obtained lawful permanent resident and be legally entitled to that status, *i.e,* that the status be obtained and maintained lawfully.
>
> However, the Court's decision here does not rest on the interpretation of this specific phrase. The Court need not—and, indeed, it remains convinced that it should not in the context of de novo review of the denial of naturalization applications—reach the question of whether Plaintiffs had satisfied the requirements to have the conditions removed from their conditional resident status.

■ The Court agrees with the Government's position on the matter. The Court's determination is guided by the Supreme Court's admonition to construe the INA in the government's favor, based on a reading of the plain language of the regulatory provisions governing conditional resident status, and informed by the reasoning in judicial decisions addressing the removal of conditions in marriage-based "immediate relative" cases.

As an initial matter, the definition of "conditional permanent resident" unequivocally identifies limitations on the status initially obtained by EB–5 and immediate relative immigrants: "A conditional permanent resident is an alien who has been lawfully admitted for permanent residence ... *except* that a conditional permanent resident is *also subject to the conditions and responsibilities* set forth in [the sections governing removal of conditions]. *Unless otherwise specified, the rights,* privileges, responsibilities and duties which apply to all other lawful permanent residents *apply equally to conditional permanent residents,* including but not limited to the right to *apply* for naturalization (if otherwise eligible) ...." 8 C.F.R. § 216.1 (emphasis added). Even read in light of other, more ambiguous statutory and regulatory provisions such as 8 U.S.C. § 1186b(3) (providing that conditional residents "shall be considered to have been admitted as an alien lawfully admitted for permanent residence and to be in the United States as an alien lawfully admitted to the United States for permanent residence"), the Court finds the inescapably reasonable reading of the definition of "conditional permanent resident" reveals meaningful "conditions" on the resident's status, the most readily apparent of which are: (1) conditional residents are subject to additional requirements and responsibilities in connection with seeking the removal of the conditions on their status, and (2)

the right identified in connection with naturalization is the right to "apply" to naturalize.

Additionally, the Court finds that the most reasonable and plausible reading of 8 U.S.C. § 1186b(e) and 8 C.F.R. § 216.1 does not suggest that naturalization can be granted before conditions are removed. Rather the plausible reading is that time spent as a conditional resident is properly credited toward the time required for residence and physical presence in the United States after admission. *See* 8 U.S.C. § 1427(a) (including under the subsection headed "residence" in the section detailing "requirements of naturalization," requirements of continuous residence in the United States for five years after admission as a permanent resident and physical presence in the United States for at least half of that time); *see also Almendarez–Torres v. U.S.,* 523 U.S. 224, 234, 118 S.Ct. 1219, 1226, 140 L.Ed.2d 350 (1998) (noting that " "the title of a statute and the heading of a section" are "tools available for the resolution of a doubt" about the meaning of a statute" (internal citations and quotations omitted)).

Finally, the Court finds that its reading of the provisions governing the conditional status of EB–5 immigrants is reasonable in light of analogous case law treating the conditional resident status of immediate relative immigrants. For example, in *Choin v. Mukasey,* 537 F.3d 1116 (9th Cir.2008), the Ninth Circuit reviewed the four-step process by which a person who enters the United States on a "K visa" (admitted for the purpose of marrying a United States citizen to whom the K visa holder is engaged) must, in order to become a lawful permanent resident: (1) obtain a K visa on the basis of a visa petition filed by her U.S. citizen fiancé; (2) enter the United States and marry the petitioning U.S. citizen within 90 days of entry;

(3) apply to adjust to lawful permanent resident status, and (4) apply to have the conditions removed from lawful permanent status by jointly petitioning with her U.S. citizen spouse. *Id.* at 1118–19.[9] The court explained that the third step (adjustment to conditional resident status) and fourth step (petition for removal of conditions) were added as a result of the enactment of Immigration Marriage Fraud Amendments ("IMFA"):

> The purpose of the IMFA was "to deter immigration-related marriage fraud and other immigration fraud." Pub.L. No. 99–639. These amendments were necessary because, prior to enactment of the IMFA, even a sham marriage to a United States citizen provided a ready and immediate path to lawful permanent resident status. See Charles Gordon, Stanley Mailman & Stephen Yale–Loehr, Immigration Law and Procedure § 42.01 (2007). Congress there-

fore limited the path to permanent residency by providing that K visaholders can only adjust to permanent resident status based on marriage to the fiancé who petitioned for them, not based on a marriage to someone else or any other basis. *Congress also created the conditional permanent resident status to enable the government to gather two years of evidence about a marriage before granting full permanent resident status....*

*Id.* at 1120 (emphasis added).

The Sixth Circuit's discussion of conditional resident status in marriage cases in *Bilali v. Gonzales,* 502 F.3d 470 (6th Cir. 2007), is similarly instructive. In that case, an immigration judge had granted a foreign national spouse, Bilali, conditional permanent resident status, noting that "the issue to be resolved [wa]s whether [the marriage] was entered into to obtain immigration benefit and conclud[ing] that

**9.** The court explained the third and fourth steps as follows:

> If the couple is married within ninety days, the non-citizen spouse can take the third step and apply to adjust her status to that of a lawful permanent resident. Before 1986, this application for adjustment of status was automatic. In 1986, however, in response to certain marriage fraud concerns, Congress enacted the Immigration Marriage Fraud Amendments ("IMFA"). Pub. L. No. 99–639. The IMFA deleted the language that made adjustment of status for K visaholders automatic, and therefore required K visaholders, like other nonimmigrants, to adjust their status through the Immigration and Nationality Act ("INA") § 245. Congress also added INA § 245(d), which provided that K visaholders could adjust to permanent resident status only "as a result of the marriage of the nonimmigrant ... to the citizen who filed [the K visa petition]." 8 U.S.C. § 1255(d). This means that an immigrant entering the country on a K visa cannot adjust her status to that of a permanent resident based on a marriage to a person other than her original fiancé, or on any other basis.

> The IMFA also added a new fourth step to the process. Now, K visaholders can first adjust only to conditional permanent resident status. Section 216 of the INA now provides that, for the first two years of permanent resident status, spouses of U.S. citizens are only conditional permanent residents. Upon the two-year anniversary of gaining conditional permanent resident status, the couple can jointly petition to have the non-citizen's conditional tag removed. In the joint petition, the couple must affirm that they are still married and that they did not enter into marriage for immigration purposes. 8 U.S.C. § 1186a(d)(1). They must also provide information about their place of residence and their employment history over the previous two years. *Id.* If the non-citizen is unable to file the joint petition because her marriage has ended, she may apply for a waiver of the petition requirement by attesting that her marriage was entered into in good faith. 8 U.S.C. § 1186(c)(4)(B).

> *Choin,* 537 F.3d at 1118–19 (internal citations omitted).

from the evidence that ha[d] been provided [he] d[id] not believe that [wa]s the case." *Id.* at 472 (internal quotations omitted). After the parties to the marriage attended an initial interview in connection with their subsequent petition to remove the conditions on Bilali's status, they were asked to return for a second interview, after which the U.S. citizen spouse provided conflicting information to the Government regarding whether or not she had been coerced into entering the marriage by force. *Id.* Bilali's petition to remove the conditions on his status was denied because his spouse refused to answer questions at the second interview. *Id.* at 473. "At subsequent removal proceedings, Bilali argued that his conditional status was wrongly revoked and that it should have been made permanent without further proof that the marriage was bona fide. He claims that because the immigration judge who granted him conditional permanent status had made a preliminary determination that his marriage was bona fide, collateral estoppel should operate to bar further inquiry into the question." *Id.* The Sixth Circuit quoted the immigration judge's "cogent" reasoning in rejecting Bilali's argument:

On its face, respondent's position crumbles on its own weight. The statute uses the term "conditional" at two different points. Section 216(a)(1) [8 U.S.C. § 1186a(a)(1) ] provides when an alien spouse is granted conditional status, it shall be considered "on a conditional basis subject to" meeting the remaining requirements of § 216. Section 216 then requires a petition and further interview to determine the facts. Section 216(c)(3)(B) further provides, "If the Attorney General determines that such facts and information are true, the Attorney General ... shall remove the conditional basis...." *To accept respondent's contention would be to read the word "conditional" completely out of the statutory scheme and render the statute impotent.*

*Id.* (emphasis added).

Although the Court is acutely aware of the fact that this problem—the fact that the conditions have never been removed from Plaintiffs' status because their I–829 applications remain unadjudicated more than a decade after they were filed—is not a problem entirely of their own making,[10] the fact remains that the Court cannot

---

10. As the Court pointed out in its order granting summary judgment in favor of Plaintiffs at an earlier stage in this litigation:

> The Government is correct that there is no "right" to naturalization. *Tutun v. U.S.*, 270 U.S. 568, 578, 46 S.Ct. 425, 427, 70 L.Ed. 738 (1926) ("The opportunity to become a citizen of the United States is said to be merely a privilege, and not a right."). However, it does not logically follow that applicants for naturalization are not entitled to have their applications adjudicated as the controlling statute requires.
>
> The Government's argument rings particularly false in light of the fact that the purported obstacle to a determination regarding Plaintiffs' N–400 applications is created and reinforced by USCIS's failure to resolve the matter of the removal of the conditions from Plaintiffs' permanent resident status six and half years after Tadjdeh timely filed her I–829 petition. As the source of the obstacle to a final determination on Plaintiffs' N–400 applications, the Government cannot credibly claim that the same obstacle prevents USCIS from complying with its statutory obligation to make a final determination no more than 120 days after USCIS schedules and conducts a naturalization interview.
>
> USCIS requires strict compliance with the filing deadlines and substantive requirements for the receipt and maintenance of immigration benefits, and USCIS is similarly obliged to comply with the existing statutory requirements for timely adjudication of the applications and petitions submitted to it.

Feb. 14, 2006 Order at 11–12.

find, as a matter of law, that USCIS is obligated to approve a naturalization application before the conditions have been removed from an applicant's status.

## V. CONCLUSION

Therefore, the Court GRANTS Summary Judgment sua sponte in favor of Defendants. Counsel for Defendants is directed to prepare a Judgment for the Court's signature within ten days of the date of this Order.

**IT IS SO ORDERED.**